# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

CAPITOL SPECIALTY INSURANCE CORPORATION,

        Plaintiff,

v.                              CIVIL ACTION NO.  2:16-cv-11340

TAYWORSKY LLC, et al,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Motions to Dismiss filed by Defendant Tayworsky LLC, (ECF No. 14), and Defendant Keona Brock, (ECF No. 20). For the reasons that follow, both motions are **DENIED**.

### *I.*    *BACKGROUND*

This is a declaratory judgment action, in which Plaintiff Capitol Specialty Insurance Corporation seeks a determination of its liability insurance coverage with respect to Defendant Keona Brock's state tort suit pending against Defendant Tayworsky LLC, d/b/a/ Monkey Barrel Bar ("Tayworsky"). Plaintiff seeks a declaration that it has no duty to defend or indemnify Tayworsky in that related litigation.

Tayworsky operates a bar in downtown Charleston, West Virginia. Brock's claims against Tayworsky arise from a gunshot wound she suffered while patronizing the bar on July 4,

2015.¹  In a civil action pending in the Circuit Court of Kanawha County, West Virginia, Brock alleges that Tayworksy proximately caused her injury by failing to provide adequate security. At the time of the shooting, Tayworsky was covered by a general commercial liability insurance policy issued by Plaintiff. Tayworsky has requested that Plaintiff provide a defense and indemnification under the policy and Plaintiff has done so, subject to a reservation of rights.

On November 23, 2016, Plaintiff initiated this proceeding under the federal Declaratory Judgment Act ("DJA"). Plaintiff invokes the Court's diversity jurisdiction by alleging complete diversity and an amount in controversy exceeding $75,000.²  An Amended Complaint filed January 3, 2017 is now the operative pleading in this matter. Plaintiff claims that two clauses in the policy—an assault and battery exclusion and a liquor liability exclusion—exclude coverage for any injuries suffered by Brock and Tate. Tayworsky moved to dismiss on January 12, 2017, arguing that Plaintiff fails to establish the requisite amount in controversy and, alternatively, that the Court should abstain from hearing this dispute. Plaintiff responded in opposition to the motion and Tayworsky elected not to file a reply. On January 30, 2017, Brock filed a separate motion for dismissal. In a single-page motion lacking a supporting memorandum, Brock joins in Tayworksy's request for abstention.³  Plaintiff filed a memorandum opposing Brock's motion. The deadline for Brock's reply having expired, both motions are ready for disposition.

---

¹ Plaintiff also names as a defendant Melissa Tate, another patron injured at Tayworsky's bar on the night in question. Tate has provided notice of her potential claim against Tayworsky but had not initiated formal legal proceedings by the time of filing of Plaintiff's Amended Complaint.

² Plaintiff is a Wisconsin corporation with its principal place of business in Wisconsin. By contrast, all Defendants are citizens of West Virginia for purposes of diversity jurisdiction. (Am. Compl. ¶¶ 3–5.)

³ The Local Rules of Civil Procedure of this Court require the submission of a supporting memorandum when filing certain motions. Motions to dismiss are among those requiring a supporting memorandum. L.R. Civ. P. 7.1(a)(2). Brock's failure to comply with the Local Rules would justify the denial of her motion on that basis alone. Because the Court ultimately rules against Tayworsky and Brock with regard to abstention, the Court will not take action to remedy Brock's noncompliance.

## II. DISCUSSION

The Court addresses Tayworsky's challenge to subject matter jurisdiction before considering its arguments in support of abstention. Though Brock also moves for dismissal on abstention grounds, she simply incorporates Tayworsky's arguments by reference and offers none of her own. The Court thus disregards Brock's motion for purposes of its analysis.

### A. *Jurisdictional Challenge*

A motion to dismiss an action under Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction over the action. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: 'facial attacks' and 'factual attacks.'" *Adkins v. United States*, 923 F. Supp. 2d 853, 856 (S.D. W. Va. 2013) (citing *Thigpen v. United States*, 800 F.2d 393, 401 n. 15 (4th Cir. 1986)). A "facial attack" questions whether "the allegations of the complaint are facially []sufficient to sustain the court's jurisdiction." *Thigpen*, 800 F.2d at 401 n. 15. In such a case, the court must accept the allegations as true and proceed to consider the motion as it would a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Id.*

Tayworsky argues that Plaintiff fails to allege facts sufficient to establish subject matter jurisdiction, not that Plaintiff's jurisdictional allegations are untrue. *See Adams*, 697 F.2d at 1219 (distinguishing between facial and factual attacks). The Court construes Tayworsky's challenge to subject matter jurisdiction as a facial attack.

Plaintiff's Amended Complaint invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332. In this context, district courts may exercise diversity jurisdiction over a case if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . . and is

3

between citizens of different States." 28 U.S.C. § 1332(a)(1). Complete diversity exits under § 1332 if no plaintiff is a citizen of the same state as any defendant. *See Rosmer v. Pfizer*, 263 F.3d 110, 123 (4th Cir. 2001). Tayworsky does not challenge the existence of complete diversity.

In the typical case, "the 'sum claimed by the plaintiff controls the amount in controversy.'" *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir.2010) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). Where a plaintiff claims a sum sufficient to meet the statutory threshold, dismissal is appropriate "only if 'it is apparent, *to a legal certainty*, that the plaintiff cannot recover the amount claimed." *Id.* (citing *Red Cab Co.* at 289) (emphasis in original). In such a case, the burden is on the defendant to show "the legal impossibility of recovery [to] be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Wiggins v. N. Am. Equitable Life Assur. Co.*, 644 F.2d 1014, 1017 (citation and internal quotation marks omitted).

The Court's evaluation of the amount in controversy begins with reference to Plaintiff's Amended Complaint. *JTH Tax*, 624 F.3d at 638 (citation omitted). The Amended Complaint states, without elaboration, that the amount in controversy is greater than $75,000. (Am. Compl. ¶ 5.) Tayworsky challenges that assessment for two reasons. First, Tayworsky claims that liability for Brock's injuries will fall principally on the two assailants involved in the shooting at the bar. Because West Virginia law prohibits joint liability, W. Va. Code § 55-7-13c(a), and noting that the assailants are primarily responsible for Brock's injuries, Tayworsky suggests that the amount of damages for which it will personally be liable is far less than $75,000. Second, Tayworsky argues generally that because Brock's medical expenses do not exceed $75,000, the

amount in controversy falls below the statutory threshold. As explained below, resolution of the first argument puts an end to the second.

Tayworsky's contention that nonparties may be liable for the majority of Brock's damages is speculative and insufficient to disprove Plaintiff's amount in controversy allegation by a legal certainty. In any event, the Court's task is to assess the value of the underlying claim, not the strength of Brock's case against Tayworsky. *Darbet, Inc. v. Bituminous Cas. Corp.*, 792 F. Supp. 487, 489 (S.D. W. Va. 1992) (reasoning that where lawsuit seeks a declaration as to the applicability of an insurance policy to a particular occurrence, "the amount in controversy is the value of the underlying claim").

In making that assessment, the Court must consider the "pecuniary result to either party which th[e] judgment *may* produce." *Gov't Emp.'s Ins. Co. v. Lally*, 327 F.2d 568, 570 (4th Cir. 1964) (emphasis added). The Brock Complaint seeks damages for medical expenses, pain and suffering, annoyance and inconvenience, loss of enjoyment of life, emotional distress, costs, attorney's fees, and pre- and post-judgment interest. Tayworsky represents that Brock's medical expenses, though not specified in her Complaint, total less than $65,000. (Tayworsky Mem. in Supp. Mot. to Dismiss at 3 n. 1.) That fact only strengthens Plaintiff's position. Tayworsky has made no attempt to disprove Plaintiff's assertion that Brock's various other damages could exceed $10,000. Further, the costs incurred by Plaintiff for defending the Brock lawsuit can also be included in determining whether Plaintiff sufficiently alleges amount in controversy. *Erie Ins. Property and Cas. Co. v. Smith*, No. 5:05-cv-01137, 2006 WL 2591127, at *4 (S.D. W. Va. Sept. 8, 2006).

Given Brock's medical expenses, her claim for general damages, and the typical costs associated with litigation, the Court cannot find to a "legal certainty" that the value of Tayworsky's underlying claim is below the statutory threshold of $75,000. On this basis, Tayworsky's Motion to Dismiss is **DENIED**.

B.  *Abstention*

Defendants move the Court to abstain from exercising jurisdiction over this declaratory judgment action. As the Supreme Court has long recognized, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (citation omitted). The duty is not absolute, however, and a declaratory judgment action presents one circumstance where a federal court may decline to exercise jurisdiction. The DJA provides that federal courts "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201 (emphasis added). The language is permissive, not mandatory, thereby endowing federal courts with the discretion to adjudicate claims in the declaratory judgment context. *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995)).

The Court's discretion is not unfettered, however. As the Fourth Circuit has explained, "a district court may not refuse to entertain a declaratory judgment action out of whim or personal disinclination . . . but may only do so for good reason." *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994), *abrogated on other grounds by Centennial Life*, 88 F.3d at 257–58 (internal quotation marks and citations omitted). While "a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism," *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998), a declaratory judgment action

6

should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Aetna Cas. & Surety Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937). Tayworsky argues that the West Virginia court is in the best position to handle this "satellite suit" because the Court's adjudication of the insurance dispute would not resolve the entire controversy between the parties. Presumably, Tayworsky understands the term "controversy" to encompass the questions of insurance coverage as well as Brock's underlying tort action.

This Court has had previous occasion to consider the definition of the term "controversy" as used in *Quarles*. *First Fin. Ins. Co. v. Crossroads Lounge, Inc.*, 140 F. Supp. 2d 686 (S.D. W. Va. 2001). Like here, *First Financial* considered an insurer's request for a declaration of the applicability of an insurance policy's assault and battery exclusion. The Court questioned whether the "controversy" at issue was limited to that between the insurer and insured or included the underlying tort claims from which the need for a declaration arose. "If 'controversy' means simply the insurance coverage questions, as framed by the declaratory judgment complaint, then settling those issues in federal, rather than state, court will not result in a piecemeal determination of the 'controversy.'" *Id.* at 691. The Court adopted "a flexible, case-by-case, and party-oriented definition of controversy," finding that where "the questions presented by the declaratory judgment complaint circumscribe the entire controversy between the declaratory plaintiff and the declaratory defendants, *Quarles* will normally resolve in favor of retention of the federal action." Id. at 692.

Such is the case here. The controversy in the case at hand is limited to Plaintiff's duties to defend and indemnify Tayworsky in any tort claims arising from the shooting at Tayworsky's

bar, and the Court's adjudication of the suit will not result in "piecemeal" litigation. Thus, the Court reaffirms its precedent establishing that "the existence of parallel state court litigation alone does not require dismissal of a federal declaratory judgment action." *USF Ins. Co. v. Stowers Trucking, LLC*, 684 F. Supp. 2d 786, 791 (S.D.W. Va. 2010) (citing *First Fin. Ins. Co.*, 140 F. Supp. 2d at 686).

The Fourth Circuit has also articulated four factors to guide district courts in determining whether to abstain from a case where an insurer seeks declaratory judgment while related litigation against the insured is ongoing in state court. *See Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir. 1992). The district court should consider:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts, (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending, and (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law."

*Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994) (citing *Mitcheson*, 955 F.2d at 237–40) (internal citations omitted). To these three factors, *Nautilus* added a fourth: "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable." *Id.* at 376 (internal quotation marks and alterations omitted). Tayworsky does not meaningfully engage with any of these factors. The Court nevertheless conducts a brief factor-by-factor analysis as directed by circuit precedent.

The first factor for consideration is West Virginia's interest in having this declaratory judgment action decided in its state courts. State law controls in a diversity case involving the interpretation of an insurance contract. *See Mitcheson*, 955 F.2d at 237 (noting state law

ordinarily provides the rule of decision in diversity cases). Further, states have an interest in resolving questions involving their own insurance laws. *Id.* at 237 ("There exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case."). However, federal courts routinely decide matters of state law, and the Fourth Circuit has routinely recognized that the discretion to abstain "may be exercised only when the questions of state law involved are difficult, complex, or unsettled." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006); *see also Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 824 (4th Cir. 2000) ("Comity concerns do not weigh heavily in favor of the exercise of jurisdiction. Although this case will involve the application of state law, there is nothing that would give West Virginia courts a particularly strong interest in deciding it." (citation omitted)); *c.f. Allstate Property and Cas. Ins. Co. v. Cogar*, 945 F. Supp. 2d 681, 690 (N.D. W. Va. 2013) (finding first factor favored abstention where resolution of declaratory judgment action turned on an unsettled area of state insurance law).

Accordingly, this Court has found this factor does not weigh in favor of abstention when the case concerns the routine application of West Virginia insurance law. *USF Ins. Co.*, 684 F. Supp. 2d at 791 ("[W]hile there are important state interests involved, those issues, standing alone, are not of the nature that would require this court to dismiss the declaratory judgment action."); *First Fin. Ins. Co.*, 140 F. Supp. 2d at 696 ("[T]he Court finds that application of the assault and battery exclusion involves legal questions that are neither novel, unsettled, difficult, complex, nor otherwise problematic, and that the first *Nautilus* factor is neutral[.]"). These cases aside, the Court also notes that Tayworsky fails to identify a single unique feature of this case that would

ordinarily provides the rule of decision in diversity cases). Further, states have an interest in resolving questions involving their own insurance laws. *Id.* at 237 ("There exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case."). However, federal courts routinely decide matters of state law, and the Fourth Circuit has routinely recognized that the discretion to abstain "may be exercised only when the questions of state law involved are difficult, complex, or unsettled." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006); *see also Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 824 (4th Cir. 2000) ("Comity concerns do not weigh heavily in favor of the exercise of jurisdiction. Although this case will involve the application of state law, there is nothing that would give West Virginia courts a particularly strong interest in deciding it." (citation omitted)); *c.f. Allstate Property and Cas. Ins. Co. v. Cogar*, 945 F. Supp. 2d 681, 690 (N.D. W. Va. 2013) (finding first factor favored abstention where resolution of declaratory judgment action turned on an unsettled area of state insurance law).

Accordingly, this Court has found this factor does not weigh in favor of abstention when the case concerns the routine application of West Virginia insurance law. *USF Ins. Co.*, 684 F. Supp. 2d at 791 ("[W]hile there are important state interests involved, those issues, standing alone, are not of the nature that would require this court to dismiss the declaratory judgment action."); *First Fin. Ins. Co.*, 140 F. Supp. 2d at 696 ("[T]he Court finds that application of the assault and battery exclusion involves legal questions that are neither novel, unsettled, difficult, complex, nor otherwise problematic, and that the first *Nautilus* factor is neutral[.]"). These cases aside, the Court also notes that Tayworsky fails to identify a single unique feature of this case that would

ordinarily provides the rule of decision in diversity cases). Further, states have an interest in resolving questions involving their own insurance laws. *Id.* at 237 ("There exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case."). However, federal courts routinely decide matters of state law, and the Fourth Circuit has routinely recognized that the discretion to abstain "may be exercised only when the questions of state law involved are difficult, complex, or unsettled." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006); *see also Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 824 (4th Cir. 2000) ("Comity concerns do not weigh heavily in favor of the exercise of jurisdiction. Although this case will involve the application of state law, there is nothing that would give West Virginia courts a particularly strong interest in deciding it." (citation omitted)); *c.f. Allstate Property and Cas. Ins. Co. v. Cogar*, 945 F. Supp. 2d 681, 690 (N.D. W. Va. 2013) (finding first factor favored abstention where resolution of declaratory judgment action turned on an unsettled area of state insurance law).

Accordingly, this Court has found this factor does not weigh in favor of abstention when the case concerns the routine application of West Virginia insurance law. *USF Ins. Co.*, 684 F. Supp. 2d at 791 ("[W]hile there are important state interests involved, those issues, standing alone, are not of the nature that would require this court to dismiss the declaratory judgment action."); *First Fin. Ins. Co.*, 140 F. Supp. 2d at 696 ("[T]he Court finds that application of the assault and battery exclusion involves legal questions that are neither novel, unsettled, difficult, complex, nor otherwise problematic, and that the first *Nautilus* factor is neutral[.]"). These cases aside, the Court also notes that Tayworsky fails to identify a single unique feature of this case that would

benefit from review by the West Virginia courts. The Court therefore finds that this factor does not support abstention.

The second factor, efficiency, weighs in favor of retaining jurisdiction. This factor requires consideration of "the scope of the pending state court proceeding" including "whether the claims of all parties in interest [to the federal action] can satisfactorily be adjudicated in that proceeding[.]" *Great Am. Ins. Co.*, 468 F.3d at 212 (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)). The Court understands that Plaintiff is not a party to the state litigation, and the issues involved in the liability exclusions are not before the state court. There would therefore be "no immediate efficiency gain" by transferring this action to state court. *Myles Lumber*, 233 F.3d at 825. To the contrary—because a dispute over insurance coverage should be resolved relatively quickly, and because this action does not involve the factual and legal issues presented in the tort case, the Court finds retention of the suit will further the purposes of the DJA. *See Stout v. Grain Dealers Mut. Ins. Co.*, 307 F.2d 521, 524 (4th Cir. 1962) (such a suit is the "perfect case" for declaratory judgment); *First Fin. Ins. Co.*, 140 F. Supp. 2d at 697–98 (second factor weighed against abstention where federal court was in a position to resolve coverage issues quickly and insurer was not a party to the pending state action).

As to the third factor, allowing this case to go forward will not create unnecessary entanglement between the federal and state proceedings. "This is not a case where many of the issues of law and fact sought to be adjudicated in the federal action are already being litigated by the same parties in the related state court action." *Great Am. Ins. Co.*, 468 F.3d 199 at 212. Again, Plaintiff is not a party to the state court proceedings, and the issues of insurance coverage raised here are distinct from the issues being adjudicated by the West Virginia court. Though the

two cases will have some factual overlap, the Court has no reason to conclude that the federal action will "frustrate the orderly progress of state court proceedings." *Mitcheson*, 955 F.2d at 239 (internal quotation marks and citation omitted); *First Fin. Ins. Co.*, 140 F. Supp. 2d at 698–99 (finding no legitimate threat of entanglement because resolution of the assault and battery exclusion merely required consideration of the state tort complaint and the applicable insurance policy). The third factor does not weigh in favor of abstention.

Finally, the Court has no basis to conclude that the pending federal declaratory judgment action is being used as a device for procedural fencing. "Procedural fencing generally occurs when a party is seeking to have a federal court decide issues that are already pending in state court in order to get a more favorable ruling." *USF Ins. Co.*, 684 F. Supp. 2d at 792. Where, as here, issues of insurance coverage were not pending before the state court when the insurer initiated the federal action, procedural fencing is not a concern. *See Great Am. Ins. Co.*, 468 F.3d at 212 (insurer does not engage in procedural fencing by seeking prompt resolution of coverage dispute in federal court while independent state litigation remains pending); *USF Ins. Co.*, 684 F. Supp. 2d at 792 ("[N]o coverage issues were pending in state court when USF filed its federal complaint. It has therefore not initiated a race for res judicata."); *First Fin. Ins. Co.*, 140 F. Supp. 2d at 700 ("The sequence of events and the procedural posture of this case reveal simply that this federal DJA case was filed after the state case. Without more, the Court cannot conclude that Plaintiff has engaged in the kind of procedural fencing described in *Nautilus*."). The fourth factor therefore also counsels against abstention.

In conclusion, the Court **FINDS** that *Quarles* and the *Nautilus* factors favor retention of federal jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Motions to Dismiss are **DENIED**. (ECF Nos. 14, 20.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 6, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE