**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**


CAPITOL SPECIALTY INSURANCE CORPORATION,

        Plaintiff,

v.                                  CIVIL ACTION NO.  2:16-cv-11340

TAYWORSKY LLC, et al,

        Defendants.


**MEMORANDUM OPINION AND ORDER**


Pending before the Court are Defendant Melissa Dawn Tate's ("Tate") Motion to Dismiss Pursuant to Rule 12(b)(1) or in the Alternative, Motion to Stay, (ECF No. 46), and Motion to Dismiss for Lack of Proper Service, (ECF No. 49).   For the reasons that follow, both motions are **DENIED**.

## I.   BACKGROUND

This is a declaratory judgment action in which Plaintiff Capitol Specialty Insurance Corporation seeks a determination of its liability insurance coverage with respect to Tate's state tort suit.   That state suit, which now includes the insurance coverage dispute at issue in this matter, is pending against Defendants Kent Taylor, Matthew Dworsky, Tayworsky LLC d/b/a Monkey Barrel Bar ("Tayworsky"), Frame Electric, Inc., and now Plaintiff after the state court granted Tate's motion for leave to amend the complaint on February 28, 2018.   Plaintiff here seeks a declaration that it has no duty to defend or indemnify Tayworsky in that related litigation.

Tate's state court claims against Tayworsky and the other Defendants arise from a gunshot wound she suffered while patronizing the Monkey Barrel Bar in Charleston, West Virginia, on July 4, 2015. That bar is operated by Tayworsky. Tate filed suit in the Circuit Court of Kanawha County, West Virginia, alleging that Defendants breached their duty to keep the bar in a safe condition and that her injury was a direct and proximate result of that breach. In addition to two premises liability claims, she also alleges claims of negligence and loss of consortium against the various Defendants. Tate's amended state court complaint adds Plaintiff as a named defendant in state court for the purpose of seeking declaratory relief regarding the insurance coverage dispute.

Plaintiff initiated this action on November 23, 2016, pursuant to the Declaratory Judgment Act ("DJA") and the Court's diversity jurisdiction, which this Court upheld as proper in a previous memorandum opinion and order entered on June 7, 2017. (ECF No. 28 at 3–6.) Plaintiff's Second Amended Complaint ("the Complaint") filed on October 18, 2017, is the operative pleading in this matter. Plaintiff claims in the Complaint that two clauses in its provided insurance policy—an assault and battery exclusion and a liquor liability exclusion—exclude coverage for any injuries suffered by Tate. Tate filed two distinct motions to dismiss on December 18, 2017. Plaintiff responded to Tate's first motion, entitled Motion to Dismiss Second Amended Complaint Pursuant to Rule 12(b)(1), or in the Alternative, Motion to Stay, (ECF No. 46), on December 29, 2017, (ECF No. 54). Tate filed her reply on January 5, 2018. (ECF No. 57.) Plaintiff's response to Tate's second motion to dismiss based on lack of proper service, (ECF No. 49), was filed January 2, 2018, (ECF No. 55), and Tate replied on January 9, 2018, (ECF No. 58). Both motions are ripe for adjudication.

## II.   DISCUSSION

### A.   Abstention

Tate's first motion, filed pursuant to Federal Rule of Civil Procedure 12(b)(1), requests that the Court abstain from exercising jurisdiction over this declaratory judgment action based on parallel state court proceedings.   While "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress," *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (citation omitted), the duty is not absolute, and this Court has discretion to decline to exercise jurisdiction over declaratory judgment actions.   *See* 28 U.S.C. § 2201 (providing that federal courts "*may* declare the rights and other legal relations of any interested party seeking such declaration" (emphasis added)); *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 257 (4th Cir. 1996) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995)); *see also Wilton*, 515 U.S. at 282 ("[D]istrict courts possess discretion in determining whether . . . to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites.").   Nonetheless, a pending state action does not necessarily bar a federal suit concerning the same subject matter if the federal court has jurisdiction.   *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 13–19 (1983).

Despite the Court's discretion to adjudicate declaratory judgment claims, "a district court may not refuse to entertain a declaratory judgment action out of whim or personal disinclination . . . but may do so only for good reason."   *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 375 (4th Cir. 1994) (internal quotation marks omitted) (citations omitted), *abrogated on other grounds by Centennial Life Ins. Co.*, 88 F.3d at 257–58.   If the issue before the Court involves only questions of insurance coverage, then settling the matter in this forum "will not result in a piecemeal determination of 'the controversy,'" *First Fin. Ins. Co. v.*

3

*Crossroads Lounge, Inc.*, 140 F. Supp. 2d 686, 691 (S.D. W. Va. 2001), which federal courts should seek to avoid in declaratory judgment actions. *See Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937). Where "questions presented by the declaratory judgment complaint circumscribe the entire controversy between the declaratory plaintiff and the declaratory defendants, [the Fourth Circuit's decision in] *Quarles* will normally resolve in favor of retention of the federal action." *First Fin. Ins. Co.*, 140 F. Supp. 2d at 692.

As this Court previously explained, "[t]he controversy in the case at hand is limited to Plaintiff's duties to defend and indemnify Tayworsky in any tort claims arising from the shooting at Tayworsky's bar, and the Court's adjudication of the suit will not result in 'piecemeal' litigation." (ECF No. 28 at 7–8.) As such, "the existence of parallel state court litigation alone does not require dismissal" of this action. *USF Ins. Co. v. Stowers Trucking, LLC*, 684 F. Supp. 2d 786, 791 (S.D. W. Va. 2010) (citing *First Fin. Ins. Co.*, 140 F. Supp. 2d at 686). Tate argues, however, that this Court should abstain from exercising its jurisdiction because the West Virginia court is where this matter "can more easily be resolved . . . ." (ECF No. 47 at 4.)

In determining whether to abstain where an insurer seeks declaratory judgment while related litigation against the insured is ongoing in state court, the Fourth Circuit has announced four factors to guide district courts. *See Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir. 1992). Those factors for the Court's consideration are the following:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; and (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law."

*Nautilus Ins. Co.*, 15 F.3d at 377 (internal citations omitted) (citing *Mitcheson*, 955 F.2d at 237–40). "To these three factors, *Nautilus* added a fourth: 'whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable.'" (ECF No. 28 at 8 (quoting *Nautilus Ins. Co.*, 15 F.3d at 376 (alterations omitted) (internal quotation marks omitted)).)

First, the Court must consider West Virginia's interest in having this declaratory judgment action decided in its state courts. West Virginia law controls in a diversity case such as this where the issue involves the interpretation of an insurance contract, and the State has an interest in resolving questions involving its own insurance laws. *See Mitcheson*, 955 F.2d at 237 ("There exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case."). "However, federal courts routinely decide matters of state law, and the Fourth Circuit has routinely recognized that the discretion to abstain 'may be exercised only when the questions of state law involved are difficult, complex, or unsettled.'" (ECF No. 28 at 9 (citations omitted) (quoting *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006)).) If the question involves the routine application of the State's insurance laws, this factor will not weigh in favor of abstention. *See USF Ins. Co.*, 684 F. Supp. 2d at 791; *First Fin. Ins. Co.*, 140 F. Supp. 2d at 696 ("[T]he Court [finds] that application of the assault and battery exclusion involves legal questions that are neither novel, unsettled, difficult, complex, nor otherwise problematic, and that the first *Nautilus* factor is neutral . . . .").

Tate argues that this first factor supports abstention because "one of the issues that must be resolved in order to resolve this declaratory judgment action is whether Plaintiff's liquor liability exclusion applies and whether it was clearly brought to the state court defendants' attention and whether they would have purchased a policy of liability for a bar with a liquor liability exclusion." (ECF No. 47 at 6.)  Conversely, Plaintiff asserts that "the issues presented in this action for declaratory judgment are not novel issues, and there are no issues at bar that have not been ruled on by West Virginia courts."  (ECF No. 54 at 6 (citations omitted).)  Plaintiff further argues that Tate's focus on the liquor liability exclusion is misplaced as "it is the assault and battery exclusion which is primarily at issue in this case."  (*Id.*)

The Complaint alleges that the activity central to the underlying state action is not covered by the insurance policy at issue due to the applicability of the following two exclusion provisions: the liquor liability exclusion and the assault and battery exclusion.  (ECF No. 40 at 5–8 ¶¶ 22–27.)  The Court agrees with Plaintiff that the issues presented by the two provisions' possible application to the facts in this case are not novel and unsettled as Tate purports to believe.

The Supreme Court of Appeals of West Virginia ("WVSCA") has been clear that "the rules of construction that are applicable to contracts generally" also control insurance policies, *Payne v. Weston*, 466 S.E.2d 161, 166 (W. Va. 1995), and that a "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law" for the trial court to decide.  Syl. pt. 1, *Tennant v. Smallwood*, 568 S.E.2d 10 (W. Va. 2002); *see also* Syl. pt. 2, *Riffe v. Home Finders Assocs., Inc.*, 517 S.E.2d 313 (W. Va. 1999) ("The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination . . . .").  Importantly, "[t]he mere fact that parties do not agree to the construction

of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syl. pt. 1, *Berkeley Cty. Pub. Serv. Dist. v. Vitro Corp. of Am.*, 162 S.E.2d 189 (W. Va. 1968).

Further, the WVSCA has held that exclusionary clauses within insurance policies must be "conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." Syl. pt. 10, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (W. Va. 1987), *overruled on other grounds by Parsons v. Halliburton Energy Servs., Inc.*, 785 S.E.2d 844 (W. Va. 2016). The ways in which an exclusionary clause may be brought to an insured's attention include, but are not limited to, "reference to the exclusion and corresponding premium adjustment on the policy's declarations page or procurement of the insured's signature on a separate waiver signifying that he/she has read and understood the coverage limitation." *Mitchell v. Broadnax*, 537 S.E.2d 882, 895 n.24 (W. Va. 2000), *superseded by statute as recognized in Findley v. State Farm Mut. Auto. Ins. Co.*, 576 S.E.2d 807 (W. Va. 2002), *cert. denied*, 539 U.S. 942 (2003); *see also Am. States Ins. Co. v. Surbaugh*, 745 S.E.2d 179, 189 (W. Va. 2013) (providing that *Mitchell* "outlines the requirements for bringing an exclusion to the attention of a policyholder").[1]

---

[1] The court in *American States Insurance Co.* went on to explain the following in finding that the insurer satisfied its duty to disclose the unambiguous and conspicuous exclusion to the insured:

> [T]here is no basis to suggest that American States had to do more than demonstrate that it communicated in writing to Mr. Grimmett that he should read the policy and its exclusions and contact American States if he had concerns. Had Mr. Grimmett read the policy, as he was told to do in a letter and on the policy itself, he would have learned of the exclusions and could have contacted American States with any questions he had regarding said exclusions. In other words, American States fulfilled its obligation to bring the exclusion to the attention of Mr. Grimmett, but Mr. Grimmett failed to carry out his duty to read the policy. The law of this State is clear in holding that "[a] party to a contract has a duty to read the instrument."

745 S.E.2d at 190 (alteration in original) (footnotes omitted) (quoting Syl. pt. 5, *Soliva v. Shand, Morahan & Co., Inc.*, 345 S.E.2d 33 (W. Va. 1986), *overruled on other grounds by Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356

Even where West Virginia courts "might not have ruled on the meaning and applicability of the precise policy language at issue" in these exclusions, the state courts "have provided sufficient guidance in the broader areas of contract interpretation and of the applicability of insurance policy exclusions generally, including whether those exclusions comport with public policy" to aid this Court's determination. *See First Fin. Ins. Co.*, 140 F. Supp. 2d at 696. It is also clear that the insurer bears "the burden of proving the facts necessary to the operation of that exclusion." Syl. pt. 3, *Farmers & Mechs. Mut. Ins. Co. of W. Va. v. Cook*, 557 S.E.2d 801 (W. Va. 2001) (quoting Syl pt. 7, *Nat'l Mut. Ins. Co.*, 356 S.E.2d at 488). The WVSCA has issued an ample number of decisions applying contract interpretation principles to insurance policies, allowing this Court to employ a similar analysis to the liquor liability and assault and battery exclusions at issue here. *See First Fin. Ins. Co.*, 140 F. Supp. 2d at 696 n.8 (collecting cases), 698–99; *accord Kelly v. Painter*, 504 S.E.2d 171, 175 (W. Va. 1998) (per curiam).

Despite Tate's argument that "it has remained an unresolved issue of law whether a liquor liability exclusion can reasonably be included in a general liability policy that is sold to a bar," (ECF No. 47 at 6), the Court is not so easily persuaded. *See Essex Ins. Co. v. Napple's Bullpen, LLC*, 33 F. Supp. 3d 667, 674 (N.D. W. Va. 2014) (following WVSCA precedent "that the meaning of a liquor liability exclusion like the one cited . . . is unambiguous" and applied to preclude claims related to the injury occurring outside the defendant bar); *see also Berkhouse v. Great Am. Assurance Co.*, No. 13–0264, 2013 WL 6152414, at *4 (W. Va. Nov. 22, 2013) (unpublished opinion) (finding no coverage under the umbrella insurance policy for plaintiff's claims because the liquor liability exclusion was "plain and unambiguous" and excluded coverage for negligent

---

S.E.2d 488 (W. Va. 1987)).

training and supervision allegations against the Charleston Moose Lodge). Tate cites Justice Starcher's concurrence in *Kelly*, which focused on the public policy implications of allowing a liquor liability exclusion to be included in an insurance policy provided to an establishment whose business revolves around the sale of alcohol. *See* 504 S.E.2d at 175–77 (Starcher, J., concurring). The majority in that case, however, held that the liquor liability exclusion at issue was clear and unambiguous and that, therefore, the insurer had no duty to defend or indemnify the insured for any imposed liability. *See id.* at 174–75 ("[T]his Court is not at liberty to rewrite the contract between the parties. No ambiguity exists. The plain language of the contract controls.").

Given that the current case involves the possible application of two exclusion provisions and that West Virginia courts have provided clear guidance on the appropriate contract interpretation principles to employ, the Court does not find that this implicates a novel or unsettled area of the law. Rather, this case appears to require only a routine application of West Virginia insurance law; the nature of the exclusion provisions at issue does not alter that analysis. Thus, this first *Nautilus* factor does not weigh in favor of abstention.

The second factor, efficiency, is effectively neutral. As a preliminary matter, the Court understands that the nature of the underlying state court case was altered recently as to affect the second and third factors' analyses. Plaintiff attached Tate's original state court complaint to its Motion for Leave to File a Second Amended Complaint, and based on that document it was clear that Plaintiff was not a party to the state case. (ECF No. 34-1 at 5.) In the pending motion to dismiss, however, Tate asserts that she "brought the declaratory judgment issues present in this action before the state court," (ECF No. 47 at 7), and Tate attaches to the motion a copy of the amended complaint containing a new count requesting declaratory relief, (ECF No. 46-1 at 8–10).

Based on Plaintiff's statement in the response that it intended "to move for a stay of the state court proceeding when the amended complaint is properly filed and served," (ECF No. 54 at 8), the Court acquired a copy of the docket from the Clerk of the Circuit Court of Kanawha County on April 5, 2018. According to that docket sheet, the state court granted Tate's motion for leave to amend her complaint on March 7, 2018, and the amended complaint was served on Plaintiff on March 16, 2018. As of April 5, 2018, no motion to stay appears on the docket.

In light of the amended complaint in state court, (*see* ECF No. 46-1 at 8–10), this Court must consider "the scope of the pending state court proceeding[s]," including "whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding . . . ." *Great Am. Ins. Co.*, 468 F.3d at 212 (alterations in original) (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)). Because the amended complaint in state court was served on Plaintiff less than a month ago, no substantial developments have occurred in that underlying litigation as to the insurance coverage claim. Indeed, both the operative Complaint and the answer to it in this federal action were filed almost six months ago, and an Amended Scheduling Order has been entered setting this case for trial later this year. Even though the state court case brought against Plaintiff has not been stayed and no motion to dismiss has been filed in it, there still does not appear to be any "immediate efficiency gain" by transferring this action to state court. *Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 825 (4th Cir. 2000). *But see Motorists Mut. Ins. Co. v. Frazier*, 623 F. Supp. 2d 727, 732–33 (S.D. W. Va. 2009) (finding that this second factor "tilts in the favor of dismissing the action" where "[t]he federal declaratory judgment action and the state declaratory judgment action mirror each other"). There are many factual questions to be resolved in the underlying litigation related to Tate's two claims

of premises liability against multiple defendants as well as her allegations of negligence and loss of consortium. (*See* ECF No. 46-1 at 5–8.) On the contrary, insurance coverage disputes should be resolved relatively quickly, and retaining this suit solely to address that issue will further the purposes of the DJA. *See Stout v. Grain Dealers Mut. Ins. Co.*, 307 F.2d 521, 524 (4th Cir. 1962) ("[T]he present suit serves the dual purpose of determining with finality the company's obligation to defend and its ultimate liability for any judgment rendered against the insured. This was a perfect case for declaratory judgment.").

This Court acknowledges that allowing the entire action to be heard in the underlying state court case—meaning both the underlying tort claims and this insurance coverage dispute—will produce a comprehensive resolution in a single forum. However, Tate originally filed her state action on July 3, 2017, but did not move to amend her complaint there until February 28, 2018. There is no indication before the Court that discovery has begun in state court related to the amended complaint and the insurance coverage question, and there are numerous factual and legal issues to be addressed in that underlying litigation outside the context of the insurance dispute. This Court has the ability to resolve more quickly the insurance coverage question, which originally was filed here on November 23, 2016, and was amended to add Tate as a Defendant on January 3, 2017. Thus, it most likely would be as efficient, if not more so, for this Court to consider the present action as is without muddling from the various underlying tort claims. As such, this second factor is neutral at best for Tate.

The third factor, which considers the unnecessary entanglement between federal and state proceedings, favors abstention. As provided above, the insurance coverage issue is now pending before the Circuit Court of Kanawha County. While Plaintiff states that it would move for a stay

of the state court proceedings after proper filing and service of the amended complaint, the Court has not been informed that such a motion is under advisement in state court or that the litigation as it relates to the insurance coverage is being delayed in any respect. Nor does the docket acquired by the Court on April 5, 2018, indicate as much.

The situation here is unlike that in *Gross*, where the issues of law and fact sought to be adjudicated regarding insurance coverage were not being litigated by the same parties in the state action. *Great Am. Ins. Co.*, 468 F.3d at 212 ("As noted above, the basic issue sought to be resolved here involves insurance coverage, and Great American is not even a party in any of the Alabama state court actions, which involve distinct and more factually complex issues."); *see also First Fin. Ins. Co.*, 140 F. Supp. 2d at 699 (citing *Myles Lumber Co.*, 233 F.3d at 825) ("[T]he absence of a pending state case on the coverage and defense issues now becomes relevant, for absent such a case, the likelihood of entanglement is even less."). The Court also finds that this scenario is distinguishable from *Scottsdale Insurance Co. v. Empire Builders, Inc.*, relied on by Plaintiff, where eighteen months passed between the filing of the underlying state court complaint and the insured's dilatory attempt to expand the state court litigation to include the insurer after discovery closed in the federal action. *See* No. 2:16-cv-05620, 2017 WL 6542508, at *2 (S.D. W. Va. Dec. 21, 2017). Additionally, in that case, the state court had stayed the insurance coverage issue before this Court had an opportunity to decide whether it would retain jurisdiction. *Id.* Such is not the case here.

Even though the state court litigation has not progressed past the filing and service of the amended complaint, the insurance coverage issue is actively pending in that action and will be resolved in due course along with the tort claims if this Court decides to abstain. Otherwise, there

inevitably will be factual overlap that could "frustrate the orderly progress of state court proceedings . . . ." *Mitcheson*, 955 F.2d at 239 (internal quotation marks omitted) (citation omitted). Accordingly, the third factor weighs in favor of abstention.

Lastly, the Court cannot conclude that Plaintiff filed this federal declaratory judgment action as a device for procedural fencing. As previously noted, "[p]rocedural fencing generally occurs when a party is seeking to have a federal court decide issues that are already pending in state court in order to get a more favorable ruling." (ECF No. 28 at 11 (quoting *USF Ins. Co.*, 684 F. Supp. 2d at 792).) As stated before when the Court considered two prior motions to dismiss on abstention grounds, Plaintiff initiated this federal action against Tate prior to the insurance coverage's inclusion in the underlying state court case.[2] (*Cf. id.*) Thus, "procedural fencing is not a concern." (*Id.* (citing *Great Am. Ins. Co.*, 468 F.3d at 212; *USF Ins. Co.*, 684 F. Supp. 2d at 792 ("[N]o coverage issues were pending in state court when USF filed its federal complaint. It has therefore not initiated a race for res judicata."); *First Fin. Ins. Co.*, 140 F. Supp. 2d at 700 ("The sequence of events and the procedural posture of this case reveal simply that this federal DJA case was filed after the state case. Without more, the Court cannot conclude that Plaintiff has engaged in the kind of procedural fencing described in *Nautilus*."))). Tate attempts to argue that "[t]he facts presented suggest Plaintiff filed this action after it knew that a [state] court would

---

[2] This federal action originally was filed on November 23, 2016. (ECF No. 1.) Plaintiff named Tate in its Amended Complaint filed on January 3, 2017, after Tate provided notice of her potential claim against Tayworsky but before she initiated formal legal proceedings. (ECF No. 10; *see also* ECF No. 28 at 2 n.1.) Tate filed her state court action on July 3, 2017, but did not name Plaintiff here as a defendant. (ECF No. 34-1 at 5.) Plaintiff subsequently moved for leave to amend the complaint in this matter on September 1, 2017, to add Tate as a Defendant based on the filing of the underlying state court litigation. (ECF No. 34.) The Court granted that motion, and the now operative Complaint was filed on October 18, 2017. (ECF Nos. 38, 40.) Tate was eventually served pursuant to an order of publication on November 1, 2017, and filed the pending motions to dismiss on December 18, 2017. (ECF Nos. 42, 46, 49.) Nevertheless, Tate did not move for leave to amend her state court complaint to include this insurance coverage dispute until February 28, 2018. Given the above procedural history, it is clear that Plaintiff did not use this federal action as a device for procedural fencing.

have to decide the coverage issues," (ECF No. 47 at 9), but, in fact, Tate initially filed her state court complaint *without* including the coverage issue. *Cf. Scottsdale Ins. Co.*, 2017 WL 6542508, at *2; *Nationwide Mut. Fire Ins. Co. v. Carter*, No. 2:15-cv-05359, 2017 WL 2531579, at *1–2, *5–6 (S.D. W. Va. June 9, 2017) (abstaining from exercising jurisdiction where the insurer initiated suit on April 28, 2015, in anticipation of a similar action by the insured, which was filed just over a month later in state court on June 1, 2015, and included an identical declaratory judgment claim against the insurer). In short, this fourth and final factor advises against abstention.

Of the four factors considered above, only one weighs in favor of abstention. Accordingly, the Court finds that *Quarles* and the *Nautilus* factors favor retention of federal jurisdiction in this matter. Insofar as Tate's first motion is brought as a motion to dismiss based on the doctrine of abstention, it is **DENIED**. (ECF No. 46.)

### B. Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013) (alteration in original) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). The title of Tate's first motion indicates that, in the alternative, she desires a stay of this proceeding if the Court does not grant her request for dismissal. However, neither the motion nor its supporting memorandum advocates for a stay reflecting the motion's styling. (ECF Nos. 46, 47. *But see* ECF No. 57 at 5 n.3 ("Any concern that the state court will abstain can be resolved by staying this matter until the state court has resolved any motion to stay made by Plaintiff and then, dismissing

14

when such motion is denied.").)    As explained above, the Court has decided to retain jurisdiction of this case and proceed with resolving the insurance coverage issue under the DJA.    The Court finds no good cause to stay this matter, and Tate does not argue to the contrary.    Thus, insofar as her motion is construed as a motion to stay, it also is **DENIED**.    (ECF No. 46.)

### C.    Service of Process

Tate's second motion to dismiss is filed pursuant to Federal Rule of Civil Procedure 12(b)(5) for lack of proper service.    (ECF No. 49.)    According to Rule 12, however, "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."    Fed. R. Civ. P. 12(g)(2).    Specifically, "[a] party waives any defense listed in Rule 12(b)(2)–(5) by: (A) omitting it from a motion in the circumstances described in Rule 12(g)(2) . . . ."    Fed. R. Civ. P. 12(h)(1); *see Tate v. Smith*, No. 1:14cv125, 2016 WL 4444856, at *2 (M.D.N.C. Aug. 23, 2016) ("Thus, 'defendants wishing to raise [a Rule 12(b)(5) insufficiency of service of process defense] *must do so in their first defensive move*, be it a Rule 12 motion or a responsive pleading.'" (alteration in original) (emphasis in original) (quoting *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund*, 967 F.2d 688, 692 (1st Cir. 1992)).[3]    While exceptions are available to this waiver in Rule 12(h)(2)–(3), those circumstance are inapposite to Tate's second Rule 12(b) motion based on subsection (5) of the rule.    Consequently, Tate's defense premised on Rule 12(b)(5) was waived when it was omitted from her first Rule 12(b) motion.

---

[3] *See also* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 (3d ed. 2004) ("A motion challenging service must be made prior to the filing of a responsive pleading . . . .    [I]f a motion is made asserting any of the defenses listed in 12(b), any objection to process must be joined in that motion or it will be deemed waived." (footnotes omitted)); 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.33 (3d ed. 2017) (explaining that a defense based on insufficiency of service of process is waived if not raised in the defendant's first Rule 12 motion, first responsive pleading, or an amendment allowed by Rule 15(a)(1) as a matter of course).

Even assuming Tate did not waive this defense as it was not included in her first Rule 12(b) motion, it still would be denied. Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve a summons and complaint on each defendant within ninety days of filing suit. If a plaintiff does not effect service within that time, *see Cobb v. GC Servs., LP*, No. 3:16-3764, 2017 WL 1856176, at *1 (S.D. W. Va. May 8, 2017) ("It is the plaintiff's burden to demonstrate that service of process was validly effected."), the district court must dismiss the action without prejudice "*or order that service be made within a specified time.*" Fed. R. Civ. P. 4(m) (emphasis added).

If a plaintiff shows good cause for a failure to serve, then Rule 4(m) requires an extension of the service time "for an appropriate period." *Id.*; *see also Mendez v. Elliot*, 45 F.3d 75, 78–79 (4th Cir. 1995). "Because the question of what constitutes 'good cause' necessarily is determined on a case-by-case basis within the discretion of the district court, courts have declined to give it a concrete definition, preferring to analyze a number of factors." *Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 306 (4th Cir. 2016) (per curiam) (unpublished opinion), *cert. denied*, 138 S. Ct. 379 (2017). Those factors include whether:

> 1) the delay in service was outside the plaintiff's control, 2) the defendant was evasive, 3) the plaintiff acted diligently or made reasonable efforts, 4) the plaintiff is *pro se* or *in forma pauperis*, 5) the defendant will be prejudiced, or 6) the plaintiff asked for an extension of time under Rule 6(b)(1)(A).[4]

---

[4] Tate cites six factors derived from West Virginia case law for the Court to apply to this analysis, (ECF No. 50 at 5 (citing *State of W. Va. ex rel. Charleston Area Med. Ctr., Inc. v. Kaufman*, 475 S.E.2d 374, 380 (W. Va. 1996)); *see also* ECF No. 58 at 1 ("Plaintiff did not have good cause for its failure to personally serve Defendant Tate within the 120 day period allowed by West Virginia Rule of Civil Procedure 4.")), but the Federal Rules and the relevant case law interpreting them govern this matter as it is pending in federal court pursuant to the DJA. *See Henderson v. United States*, 517 U.S. 654, 656 (1996) ("We hold that, in actions arising under federal law . . . the manner and timing of serving process are generally nonjurisdictional matters of 'procedure' controlled by the Federal Rules."). The federal case cited by Tate on this point applied West Virginia law "because the deputy clerk for the Marion County Circuit Court issued the summons prior to the removal of th[at] action by the defendants." *See Leach v. BB & T Corp.*, 232 F.R.D. 545, 548 (N.D. W. Va. 2005). Here, however, the case originally was filed in federal court. Thus, federal procedural law controls.

*Id.* (citing *Kurka v. Iowa Cty.*, 628 F.3d 953, 957 (8th Cir. 2010); *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010)).

Provided that the time within which to serve—set by the federal rule or extended by the Court—is honored, Rule 4(e) offers the following:

> an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district is located or where service is made . . . .

West Virginia Rule of Civil Procedure 4(e)(1) allows for service by publication if the plaintiff first files an affidavit stating "[t]hat the plaintiff has used due diligence to ascertain the residence or whereabouts of the defendant, without effect." In this context, "'[d]ue diligence' means the exercise of a reasonable effort to locate a person's residence so that notice . . . may be provided." *Cook v. Duncan*, 301 S.E.2d 837, 841 (W. Va. 1983) (citation omitted).

As stated above, Plaintiff originally named Tate as a Defendant in this matter in its first Amended Complaint filed on January 3, 2017. (ECF No. 10.) A summons was issued by the Clerk of this Court on the same day. (ECF No. 12.) Thus, under Rule 4(m), Plaintiff was required to serve process no later than ninety days thereafter, or April 3, 2017. Plaintiff failed to serve Tate within the ninety-day requirement. However, Plaintiff filed a Motion for Extension of Time Limit for Service on Defendant Melissa Tate on June 30, 2017. (ECF No. 30.) Finding good cause, the Court granted the motion and extended Plaintiff's deadline to effect service on Tate to September 30, 2017. (ECF No. 31.) On September 1, 2017, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, to Serve Defendant Melissa Tate via Publication and, in the Alternative, for Service by a United States Marshal. (ECF No. 34.) In that motion,

Plaintiff described the steps it had taken to serve Tate within the extended period of time set by the Court, including hiring an investigator. In granting the motion to serve Tate by publication, the Court found that "Plaintiff [] used due diligence to ascertain Tate's whereabouts." (ECF No. 38 at 5 ("It is obvious that Tate is avoiding service.").) Finally, an order of publication was entered on November 1, 2017, in conformance with West Virginia Rule of Civil Procedure 4(e),[5] and the publisher's certificate of publication was filed on December 18, 2017. (ECF Nos. 42, 51.)

Tate now argues that the inclusion of her actual address on one of 337 pages of medical records turned over to Plaintiff on June 19, 2017, (ECF No. 49-1 at 5; ECF No. 50 at 2; ECF No. 55 at 1), serves to defeat any good cause the Court previously found in extending Plaintiff's time to effect service. Further, Tate argues that the Georgia address "could have been easily located through a Westlaw People Map search," (ECF No. 50 at 3; ECF No. 49-2), and that she told Plaintiff at mediation on June 22, 2017, that she resided in Georgia, (ECF No. 50 at 2–3). While these facts may go toward showing that Plaintiff's actions do not exemplify a paragon of diligence, they do not upset the previous good cause findings made by the Court.

At the time of Plaintiff's first request for an extension of time for service, the Court found good cause. (ECF No. 31.) Plaintiff demonstrated that it retained a process server who made "[m]ultiple attempts to personally serve" Tate and informed Plaintiff's counsel that Tate may be

---

[5] Tate appears to argue in her motion that the service by publication in this case was deficient because service was published in a Charleston, West Virginia, newspaper as opposed to a newspaper in Georgia where she actually resides. (*See* ECF No. 50 at 6 ("Further, service of Ms. Tate by publication in Charleston, West Virginia when Plaintiff knows Ms. Tate resides in Georgia cannot be considered proper.").) West Virginia Rule of Civil Procedure 4(e)(1), as incorporated by Federal Rule of Civil Procedure 4(e)(1), provides in pertinent part that the "order of publication shall be published once a week for two successive weeks . . . in a newspaper of general circulation *in the county wherein such action is pending*." W. Va. R. Civ. P. 4(e)(1) (emphasis added). Besides the fact that the order of publication here conformed to the rule's requirements, simple logic suggests that if Plaintiff actually knew that Tate resided at 905 Calgary Glenn, Austell, Georgia, as she claims, Plaintiff would have served her at that address as opposed to filing a motion for order of service by publication. Nevertheless, the service by publication was proper under the relevant rules.

outside this District. (ECF No. 30 at 2.) Attempts at obtaining a waiver of service of process from Tate's current counsel were not fruitful. (*Id.* at 2–3.) Plaintiff also used the ninety-day period to make "a good faith attempt to settle the underlying state claim prior to the filing of Ms. Tate's lawsuit." (*Id.* at 4.) Based on these representations, the Court extended Plaintiff's time to serve to September 30, 2017. (ECF No. 31.)

Despite Tate's assertion that she told Plaintiff's counsel on June 22, 2017, that she resided in Georgia, (ECF No. 50 at 2), the Court has no means to verify that fact. (*See also* ECF No. 55 at 6 ("Ms. Tate's representation that Capitol Specialty was on notice of her Georgia address is false.").) The delay appeared to be outside Plaintiff's control given its attempts to serve Tate; Tate seemed to be evading service via her current counsel; Plaintiff appeared to make reasonable efforts to obtain Tate's whereabouts even though it did not conduct a Westlaw People Map search as Tate suggests it should have; and Tate would not have been prejudiced by the extension. *See Scott*, 673 F. App'x 299, 306 (citing *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514 (6th Cir. 2006) ("Establishing good cause is the responsibility of the party opposing the motion to dismiss . . . and necessitates a demonstration of why service was not made within the time constraints." (citation omitted) (internal quotation marks omitted)). Further, Tate protests in the current motion that "[*n*]*o attempt* was made to serve Ms. Tate at the address she resided at . . . ." (ECF No. 50 at 3 (emphasis in original).) However, simply because Tate was not personally served at her residence does not negate the due diligence Plaintiff performed in seeking to serve her. It only means that Plaintiff, despite its attempts, was unsuccessful. Plaintiff made the necessary demonstration in its motion, and the Court extended the time to effect service.

Before the expiration of the extended time to serve Tate, Plaintiff filed a motion to serve her by publication. (ECF No. 34.) That motion was supported by two affidavits from Plaintiff's investigator and Plaintiff's counsel. (*Id.* at 4 (citing ECF Nos. 34-2, 34-3).) The Court's memorandum opinion and order granting the motion summarized Plaintiff's attempts at locating Tate to personally serve her, including: (1) visiting various potential addresses, (2) speaking with Tate's neighbors, (3) making inquiries with multiple government agencies, (4) calling a cell phone number allegedly belonging to Tate, and (5) communicating on multiple occasions with Tate's current counsel and her mother, both of whom refused to accept service on her behalf and refused to divulge her whereabouts. (*See id.* at 4–5; *see also* ECF No. 55 at 5–6 (stating that Plaintiff "provided Mr. Giatras with written correspondence dated August 25, 2017, not only requesting Ms. Tate's contact information, but also informing him that it intended to file a motion to serve by publication" but that "the request was ignored and the information was not provided").) Even though the Court now has information that Tate's address was included within a host of information provided to Plaintiff in June 2017, Plaintiff's failure to either notice it or take action on it, while indicative of a less than completely thorough search, does not require modification of the Court's previous finding. (ECF No. 34 at 5 ("It is obvious that Tate is avoiding service. This should not be so difficult.").) The Court's memorandum opinion and order granting Plaintiff's second motion was premised on a finding of due diligence, *see* Fed. R. Civ. P. 4(e)(1); W. Va. R. Civ. P. 4(e)(1), and the Court accordingly entered an order of publication against Tate, (ECF Nos. 38, 42).

Pursuant to that order, (ECF No. 42), and the proper federal and state procedural rules, the publication appeared on November 17, 2017, and November 24, 2017, in the *Charleston*

*Gazette-Mail*.  (ECF No. 51.)   Thereafter, Tate filed the two pending motions on December 18, 2017.  (ECF Nos. 46, 49.)   Tate maintains that she "has yet to be properly served" since the filing of the Complaint on January 3, 2017.  (ECF No. 50 at 1–2.)   However, as explained above, service by publication was proper in this case, and the Court finds no good reason to reconsider its previous findings.

To repeat: This should not be so difficult.   This service of process episode is a ridiculous waste of time and resources for the parties and the Court.   Frankly, the Court is baffled by Tate's counsel's approach to this issue.   Plaintiff has met its "burden of proving adequate service" in light of the motion to dismiss under Rule 12(b)(5).   *See Scott*, 673 F. App'x at 304 (citing *Dickerson*, 604 F.3d at 552).   Accordingly, Tate's motion to dismiss for insufficient service of process is **DENIED**.   (ECF No. 49.)

### III.   CONCLUSION

For these reasons, the Court **DENIES** the pending motions to dismiss.   (ECF Nos. 46, 49.)   **IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        April 20, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE