IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CAPITOL SPECIALTY INSURANCE CORPORATION,

        Plaintiff,

v.                              CIVIL ACTION NO. 2:16-cv-11340

TAYWORSKY LLC, et al,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff Capitol Specialty Insurance Corporation ("Capitol Specialty") and Defendant Frame Electric, Inc.'s ("Frame Electric") cross-motions for summary judgment. (ECF Nos. 76, 74.) For the reasons provided herein, Capitol Specialty's motion, (ECF No. 76), is **GRANTED**, and Frame Electric's motion, (ECF No. 74), is **DENIED**.

*I.    BACKGROUND*

This is a declaratory judgment action in which Capitol Specialty seeks a determination of its liability insurance coverage with respect to a case pending in the Circuit Court of Kanawha County, West Virginia (the "underlying suit"). The underlying suit arises from a gunshot wound Melissa Tate suffered at the Monkey Barrel Bar in Charleston, West Virginia, on July 4, 2015. (ECF No. 79-2 at 4–5 ¶¶ 17–19.) At the time of Ms. Tate's alleged injury, Kent Taylor, Matthew Dworsky, and Tayworsky LLC d/b/a Monkey Barrel Bar (collectively "Tayworsky") operated the bar, (*id.* at 2 ¶¶ 5–7), and Frame Electric owned and managed the building occupied by the bar, (*id.* at ¶ 8; *see also* ECF No. 75 at 1.)

Ms. Tate filed the underlying suit against Tayworsky and Frame Electric asserting claims of premises liability, negligence, and loss of consortium on the basis that these defendants allegedly failed to keep the bar in a safe condition and that her injury was a direct and proximate result thereof. (ECF No. 76-1 at 4–8 ¶¶ 14–33; *see also* ECF No. 79-2 at 5–8, ¶¶ 20–39.) Her amended complaint adds Capitol Specialty and Intervening Plaintiffs American States Insurance Company and Liberty Mutual Insurance Company as named defendants for the purpose of seeking declaratory relief regarding the insurance coverage dispute that is at issue in this matter. (*Id.* at 8–13 ¶¶ 40–49, 57–68.)

At the time of the shooting, Tayworsky held a commercial general liability insurance policy issued by Capitol Specialty. (ECF No. 76-4 at 2.) Frame Electric was named an additional insured under the terms and conditions contained in the policy. (*Id.* at 5.) Under the policy, Capitol Specialty agreed to indemnify and "defend [Tayworsky and Frame Electric] against any 'suit' seeking . . . damages [for bodily injury]" when such "'bodily injury' . . . is caused by an 'occurrence'" during the policy period. (*Id.* at 73.) The policy also contains an "Assault or Battery" exclusion from general liability coverage. (*Id.* at 12.) Capitol Specialty here seeks a declaration pursuant to the Uniform Declaratory Judgments Act, West Virginia Code § 55–13–1, *et seq.*, that it has no duty to defend or indemnify Tayworsky and Frame Electric for any claim asserted in the underlying suit.

On August 20, 2018, Capitol Specialty and Frame Electric filed cross-motions for summary judgment. (ECF Nos. 76, 74). On September 4, 2018, Capitol Specialty filed a response to Frame Electric's motion, (ECF No. 79), and Frame Electric and Tayworsky each filed timely responses to Capitol Specialty's motion, (ECF Nos. 78, 80). On September 10, 2018, Capitol

Specialty filed replies to Frame Electric and Tayworsky's opposition briefs, (ECF Nos. 82, 83), and Frame Electric replied to Capitol Specialty's opposition, (ECF No. 81). As such, both motions have been fully briefed and are ripe for adjudication.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating such factual issues, the Court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element

of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

On the intersection of the standards for summary judgment and contract interpretation, the Fourth Circuit has observed that the matter of "interpretation is a subject particularly suited for summary judgment . . . ." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 835 (4th Cir. 1999); *see also Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 6 (W. Va. 1998) (stating "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination . . . .") (internal citation omitted). It has also been observed, however, that "[a]n ambiguous contract that cannot be resolved by credible, unambiguous, extrinsic evidence discloses genuine issues of material fact . . . [and] summary judgment is inappropriate." *Sempione v. Provident Bank*, 75 F.3d 951, 959 (4th Cir. 1996).

### III. DISCUSSION

Capitol Specialty argues that it is entitled to summary judgment on its declaratory judgment claims based upon the language of the insurance policy. First, Capitol Specialty contends that there is no liability coverage for the underlying claims because Ms. Tate's injury was the result of an intentional shooting rather than an "occurrence" as defined under the policy. (ECF No. 77 at 11–14.) Defendants respond that the shooter's intent is wholly irrelevant to whether Capitol Specialty has a duty to defend and/or indemnity. Rather, Defendants argue that the allegations against Defendants present issues of fact that render the underlying claims reasonably susceptible to coverage. (ECF No. 78 at 3–5.) Frame Electric further argues that Capitol Specialty has waived its right to assert an intentional act as a basis to deny coverage. (*Id.* at 5–6.) Capitol Specialty also argues the policy's "Assault or Battery" exclusion precludes coverage because the

underlying claims arise from a shooting. (ECF No. 77 at 15–18.) Conversely, Defendants aver that there is no evidence of any contact, threatened or actual, between Ms. Tate and the shooter, and, therefore, the shooting does not qualify as an assault or battery under the terms of the policy. (ECF No. 78 at 7–8.)

    A.    The Allegations Constitute An "Occurrence"

In West Virginia, courts "accord the language of an insurance policy its common and customary meaning." *Boggs v. Camden-Clark Mem'l Hosp. Corp.*, 693 S.E.2d 53, 57–58 (W. Va. 2010). *See also Nationwide Mut. Ins. Co. v. Hatfield*, 2005 WL 2978046, *2 (S.D. W. Va. Nov. 7, 2005) ("In examining language of an insurance policy, words and phrases are to be given their 'plain, ordinary meaning unless they are specifically defined in the policy.'") (internal citation omitted). If, after giving the language its customary meaning, the provisions in an insurance policy "are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed." Syl. pt. 1, *Kelly v. Painter*, 504 S.E.2d 171, 172 (W. Va. 1998). Whether a contract is ambiguous is a question of law. Syl. pt. 4, *Blake v. State Farm Mut. Auto. Ins. Co.*, 685 S.E.2d 895, 897 (W. Va. 2009) (noting "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous"). Courts must give full effect to the plain meaning of clear and unambiguous insurance policy contract provisions. *Id.* at syl. pt. 2. If, on the other hand, a provision is ambiguous, courts are to construe it "against the drafter, especially when dealing with exceptions and words of limitation." *Boggs*, 693 S.E.2d at 58 (quotations and citations omitted).

An ambiguous policy provision is one "reasonably susceptible of two different meanings or of such doubtful meaning that reasonable minds might be uncertain or disagree as to its

5

meaning." Syl. pt. 3, *Glen Falls Ins. Co. v. Smith*, 617 S.E.2d 760 (W. Va. 2005). This liberal construction, however, "should not be unreasonably applied to contravene the object and plain intent of the parties." *Id.* at syl. pt. 4 (internal citation omitted). A court is "obligated to give an insurance contract that construction which comports with the reasonable expectations of the insured." *Burr v. Nationwide Mut. Ins. Co.*, 359 S.E.2d 626, 631 (W. Va. 1987); *Glen Falls Ins. Co.*, 617 S.E.2d at 768 ("The standard is that of what a reasonable person standing in the shoes of the insured would expect the language to mean.").

Regardless of whether the language is ambiguous or unambiguous, "[a]n insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion." Syl. pt. 3, *Farmers & Mechs. Mut. Ins. Co. of W. Va. v. Cook*, 557 S.E.2d 801, 803 (W. Va. 2001) (citing Syl. pt. 7, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (W. Va. 1987)). Thus, in cases involving a determination of the scope of insurance coverage, the insured "bears the burden of establishing a prima facie case that the claim falls within the scope of coverage. Once a prima facie case has been established, the burden shifts to the insurer to demonstrate that an exclusion applies." *Runion v. Minnesota Life Ins. Co.*, 2013 WL 2458541, *2 (S.D. W. Va. June 6, 2013) (internal citation omitted).

Additionally, the West Virginia Supreme Court of Appeals described the standard for determining whether an insurance company has a duty to defend an insured as follows:

> An insurance company's duty to defend an insured is broader than the duty to indemnify under a liability insurance policy. An insurance company has a duty to defend an action against its insured if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers. If, however, the causes of action alleged in the plaintiff's complaint are entirely foreign to the risks covered by the insurance policy, then the insurance company is relieved of its duties under the policy.

6

*Bowyer v. Hi–Lad, Inc.*, 609 S.E.2d 895, 912 (W. Va. 2004). As a general rule, courts are to consider whether the allegations in the underlying complaint against the insured are "reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." Syl. pt. 4, *Tackett v. Am. Motorists Ins. Co.*, 584 S.E.2d 158, 158–60 (W. Va. 2003) (internal quotations and citations omitted). *See also* Syl. pt., *Farmers & Mechs. Mut. Fire Ins. Co. of W. Va. v. Hutzler*, 447 S.E.2d 22 (W. Va. 1994) ("When a complaint is filed against an insured, an insurer must look beyond the bare allegations contained in the third party's pleadings and conduct a reasonable inquiry into the facts" to determine "whether the claims asserted may come within the scope of the coverage that the insurer is obligated to provide."). An insurer must defend all claims against the insured if any claims fall within the policy coverage. *Tackett*, 584 S.E.2d at 529; *Horace Mann Ins. Co. v. Leeber*, 376 S.E.2d 581, 584 (W. Va. 1988) (citing *Donnelly v. Transp. Ins. Co.*, 589 F.2d 761, 765 (4th Cir. 1978)). Further, "[a]ny question concerning an insurer's duty to defend under an insurance policy must be construed liberally in favor of an insured where there is any question about an insurer's obligations." *Id.* at syl. pt. 5.

The dispositive issue here rests on the plain language of the insurance policy. The policy provides general liability and indemnity coverage for "'bodily injury' . . . caused by an 'occurrence' that takes place in the 'coverage territory.'" (ECF No. 76-4 at 73.) An "occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* at 87.) While not defined in the policy, the term "accident" in the context of insurance policies "generally means an unusual, unexpected and unforeseen event . . . . An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage.

7

. . ." *State Bancorp, Inc. v. U.S. Fidelity & Guar. Ins. Co.*, 483 S.E.2d 228, 234 (W. Va. 1997) (explaining that "both the means and the result must be unforeseen, involuntary, unexpected, and unusual.") (citation omitted). Courts routinely determine whether an event was accidental or "deliberate, intentional, expected, desired, or foreseen" from "the perspective or standpoint of the insured whose coverage under the policy is at issue." *Columbia Cas. Co. v. Westfield Ins. Co.*, 617 S.E.2d 797, 801 (W. Va. 2005) (holding that a county jail inmate's suicide constituted an accident and a covered "occurrence" under a general liability policy from the standpoint of the insured county commission because the county commission had no desire, plan, expectation, or intent for the death to occur even though the inmate intended suicide.).

Here, the underlying amended complaint alleges facts and circumstances, which, if proven, would fall within the policy's coverage. In the amended complaint, Ms. Tate broadly alleges both negligent and willful conduct on the part of Defendants. (ECF No. 79-2 at 5–7 ¶¶ 24, 29, 32, 35.) Specifically, she claims that Defendants violated their duty to maintain the bar in a reasonably safe condition and protect her from dangerous conditions based on theories of premises liability and negligence. (*Id.* at 5–7 ¶¶ 20–36.)

While some of the language in Count III of the amended complaint is couched in terms of gross negligence or intentional acts, (*see id.* at 7 ¶ 32 (alleging Defendants acted "negligently, recklessly, and/or willfully")), the pleading could support a judgment of mere negligence. In addition, Ms. Tate's premises liability claims in Counts I and II solely allege negligent conduct. (*Id.* at 6–7 ¶¶ 24, 29.) *See Stone v. Rudolph*, 32 S.E.2d 742, 748 (W. Va. 1944) (recognizing that "'[n]egligence' conveys the idea of inadvertence as distinguished from premeditation or formed intention.") (citing 38 Am. Jur. 692). Since Counts I and II clearly fall within the ambit of

8

coverage under the policy, Capitol Specialty, consequently, must defend all claims asserted against its insureds in the underlying suit.

Capitol Specialty reasons that there is no coverage for the underlying claims because the shooting of Ms. Tate was an intentional act. This argument is misplaced, however, because the shooter's intent is immaterial to whether the alleged damages arise from a covered "occurrence." Instead, the issue boils down to the alleged conduct of the policyholders, which form the basis of their liability. *See Columbia Cas. Co.*, 617 S.E.2d at 800, n.5 (noting "[t]he purpose of insurance liability policies is to provide a defense and indemnification to an insured for claims arising from the insured's own negligent acts or omissions."). The crux of the underlying amended complaint is that Ms. Tate's injury was proximately caused by the alleged "negligent, careless, wrongful and reckless conduct" of Defendants in breaching their duties to maintain a reasonably safe environment. (ECF No. 79-2 at 4 ¶ 19.) Therefore, even if the Court were to infer that the firearm was discharged deliberately, this inference would not relieve Capital Specialty of its duty to defend its insureds against claims which allege "additional unexpected, independent . . . happening[s]" that produced Ms. Tate's injury. *State Bancorp*, 483 S.E.2d at 234 (citation omitted).[1]

Accordingly, the amended complaint on its face could support a finding that the alleged events giving rise to Ms. Tate's injury were accidental from Defendants' perspective, and therefore an "occurrence" covered by Capitol Specialty's policy. *Western World Ins. Co., Inc. v. Harford*

---

[1] Similarly, despite the extrinsic evidence that may suggest the shooter intentionally fired a handgun, there is no evidence or conduct alleged that would justify imputing the shooter's intent to Defendants. The underlying suit does not specify the circumstances that led to the shooting on the night of the incident. There is no evidence as to why the gunshots were fired or who the targets were. There is no evidence connecting Defendants to the identified shooter. Further, there are no allegations that Defendants expected the shooting to occur or that Defendants intended threat or injury to any patrons. There is simply no factual basis for the Court to conclude whether the shooting—from Tayworsky and Frame Electric's perspective—was intentional or accidental.

*Mut. Ins. Co.*, 784 F.2d 558, 564 (4th Cir. 1986) ("So long as a complaint raises a potentiality of coverage, an insurer is under a duty to defend an insured named in that complaint.").[2]

### B. The Assault or Battery Exclusion Precludes Coverage

Capitol Specialty's second contention, namely, that it has no obligation under the policy to provide coverage, rests on the application of the "Assault or Battery" exclusion. The language of the "Assault or Battery" exclusion is plain and unambiguous. The exclusion provides, in pertinent part, the following:

> **"Assault or Battery" Exclusion**
>
> This insurance does not apply to, nor shall we have a duty to defend, any claim or "suit" seeking damages or expenses due to "bodily injury," . . . arising out of, resulting from, or in connection with any of the following acts or omissions regardless of their sequence or any concurring cause:
>
> a. "Assault or Battery", whether or not caused or committed by or at the instruction of, or at the direction of or arising out of the negligence of you, any insured, any person or legal entity, or any causes whatsoever;
>
> b. The suppression or prevention of, or the failure to suppress or prevent "assault or battery" by you, any insured, or any person or legal entity;
>
> c. The failure by you, any insured, or any legal entity to provide an environment safe from "assault or battery", including but not limited to the failure to provide adequate security, or the failure to warn of the dangers of the environment which could contribute to "assault or battery" or failure to maintain the premises by you, any insured or any person or legal entity;

(ECF No. 76-4 at 12.)

---

[2] As should be clear from its analysis, the Court rejects Frame Electric's argument that Capitol Specialty has waived its right to deny coverage on the basis that the underlying suit fails to constitute an "occurrence." The West Virginia Supreme Court of Appeals' ruling in *Potesta v. United States Fid. & Guar. Co*, 504 S.E.2d 135 (W. Va. 1998) is informative on the issue of waiver in the context of declaratory judgment. Following the majority rule, the *Potesta* Court held that "generally, the principles of waiver and estoppel are inoperable to extend insurance coverage beyond the terms of an insurance contract." *Id.* at 147 (outlining three exceptions to this general rule, none of which are applicable to this case). The question of whether the events giving rise to Ms. Tate's injury constitute an "occurrence" is critical to the issue of whether the relevant policy of insurance provides coverage to the underlying claims. Therefore, in this instance, waiver is not an available defense.

An "assault" is defined under the policy as "any threatened harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instruction of, or at the direction of, or arising out of the negligence of you, any insured, any legal entity, or any causes whatsoever, regardless of fault or intent." (*Id.*) Further, the policy defines a battery as "any actual harmful or offensive contact between two or more persons, whether or not caused or committed by or at the instructions of, or at the direction of, or arising out of the negligence of, you, any insured, any legal entity, or any causes whatsoever, regardless of fault or intent." (*Id.* at 13.) As Frame Electric notes, the term "contact" is not defined in the policy.

Capitol Specialty argues that because Ms. Tate was struck by a bullet, there was harmful contact between Ms. Tate and the suspected shooter, and, therefore, the exclusion applies. (ECF No. 77 at 17–18.) Defendants challenge that because the harmful contact was made between Ms. Tate and a bullet fired from a gun no contact was made between two or more persons. (ECF No. 75 at 11–13.) Essentially, Defendants argue that the exclusion requires not only harmful or offensive contact but also bodily or direct contact. The Court disagrees with Defendants' proposition.

While West Virginia courts have not defined or given legal significance to the word "contact" in the context of insurance policies, this Court is of the view that the exclusion applies to harmful or offensive contact—whether achieved through direct or indirect means—between two or more persons. *See Northfield Ins. Co. v. Boxley*, 215 F.Supp.2d 656, 661 (D. Md. 2002) (stating "indirect contact, such as when a bullet strikes a victim, may constitute a battery."); Restatement of the Law, Torts § 9, at 40 (5th ed. 1984) ("It is enough that the defendant sets a force in motion which ultimately produces the result . . . ."); *Leichtman v. WLW Jacor Commc'ns,*

11

*Inc.*, 634 N.E.2d 697, 699 (Ohio Ct. App. 1994) (finding that second-hand smoke can constitute a battery because "smoke, as a particulate matter, has the physical properties capable of making contact."). *See also State v. Julius*, 408 S.E.2d 1, 10–11 (W. Va. 1991) (clarifying that, under the doctrine of transferred intent, malicious assault and battery "do not require that the defendant cause harm to the intended victim; an unintended victim will do just as well.") (internal citation omitted). The Court is mindful it is required to construe the policy language liberally in favor of the insured. *See Aetna Casualty & Surety Co. v. Pitrolo*, 342 S.E.2d 156, 160 (W. Va. 1986). A literal reading of the policy provision, however, does not support Defendants' attempt to create ambiguity and narrow the plain language of exclusion. As the West Virginia Supreme Court of Appeals has observed, "[t]he practical solution . . . in determining the existence or extent of coverage under an insurance contract lies not in resolving conflicting views concerning obscure refinements . . . rather, it is in arriving at a fair interpretation of the words of the policy by a reasonable person in the insured's position." *Marson Coal Co., Inc. v. Insurance Co. of State of Pa.*, 210 S.E.2d 747, 750 (W. Va. 1974).

The policy defines an assault and battery in clear, simple terms. Under neither definition must contact between two persons be bodily or direct. Rather, the policy exclusion is concerned with "harmful" and "offensive" contact—contact that is either "actual" or "threatened." (ECF No. 76-4 at 12–13.) A narrow construction of the term "contact" as Defendants propose would lead to unreasonable and absurd results. Indeed, an interpretation that presumes the policy is intended to provide special protection for injury resulting from a deadly weapon "regardless of fault or intent" but not for injury caused by a physical altercation is illogical. (*Id.* at 13.) Thus,

the Court will not rewrite or construe the policy contrary to its plain language and apparent object and intent.

In this case, the incontrovertible evidence shows that the shooter committed a battery when he discharged a handgun, striking Ms. Tate. Capitol Specialty has presented evidence that multiple shotguns were heard from inside the bar; patrons were seen fleeing the bar immediately after the shots were fired; Ms. Tate's "injuries were consistent with small caliber handguns"; two .380 caliber shell casings were found inside the bar; there were two bullet holes in a wall at the bar "that were consistent with trajectory of the bullet[] that struck" Ms. Tate; the suspected shooter has been identified and apprehended; and the suspect was reported on the evening of the shooting for brandishing firearms outside of the bar. (ECF No. 76-2 at 3–4.) The only reasonable conclusion that can be drawn from this set of facts is that the suspected shooter, or other unidentified patron, shot a firearm inside the bar, causing Ms. Tate's alleged shotgun wound. There is simply no other plausible explanation and Defendants offer none.[3]

As such, the "Assault or Battery" exclusion precludes coverage for the claims asserted against Defendants in the underlying suit. The exclusion expressly provides that there is no coverage for injuries arising out of an "'[a]ssault or [b]attery', whether or not caused or committed by . . . or arising out of the negligence of you, any insured, any person or legal entity, or any causes

---

[3] Defendants suggest that no assault occurred because Ms. Tate's account of the shooting event was "vague" and "unclear." (ECF No. 78 at 7.) The fallacy of Defendants' argument appears, again, from the policy language. It makes no difference that Ms. Tate "was unaware of any pending threat and did not realize anything had happened until she was struck with the bullet", (*Id.* at 8), because the exclusion does not require that the claims be brought by the target of an assault, only that they "arise from" an assault. (ECF No. 76-4 at 12.) *See Coleman v. Acceptance Indem. Ins. Co.*, 369 Fed.Appx. 595, 597 (5th Cir. 2010) (finding victim's involvement in an altercation "immaterial to the applicability of the [Assault and Battery] Exclusion[,]" which barred "coverage for any claims arising out of Assault and Battery or out of any act or omission in connection with the prevention or suppressions of such acts"). Defendants do not dispute that the suspected shooter was reported for brandishing a firearm on the night of the shooting or that patrons fled the bar after hearing gunshots. Thus, the events that led to her injury undoubtedly involved "threatened harmful or offensive contact between two or more persons." (*Id.*)

whatsoever." (ECF No. 76-4 at 12.) The exclusion also encompasses "[t]he suppression or prevention of, or the failure to suppress or prevent 'assault or battery'", "failure . . . to provide an environment safe from 'assault or battery' . . . or failure to maintain the premises . . . ." (*Id.*) Thus, regardless whether the harmful contact between the shooter and Ms. Tate was direct or indirect, the shooting precipitating the underlying suit is an assault and battery under the policy exclusion.

Accordingly, the Court finds that the policy does not require Capitol Specialty to defend Tayworsky and Frame Electric in the underlying suit. Because Capitol Specialty has no duty to defend under the policy, it necessarily has no duty to indemnify under the policy.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Capitol Specialty's Motion for Summary Judgment, (ECF No. 76), and **DENIES** Frame Electric's Motion for Summary Judgment, (ECF No. 74).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 25, 2019

_____
THOMAS E. JOHNSTON, CHIEF JUDGE